UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL ACTION |
| ) | |
| CARLOS DELGADO-GOMEZ ) | NO. 05-CR-342-10 (RCL) |
| ) | |

**DEFENDANT'S MOTION FOR PRETRIAL DISCOVERY**

NOW COMES defendant CARLOS DELGADO-GOMEZ, by and through undersigned counsel, and moves this Court to order the timely production of pretrial discovery related to his defense.

OVERVIEW

Defendant Delgado-Gomez is aware that some of his co-defendants have filed pretrial motions seeking generic pretrial discovery. While Defendant Delgado-Gomez is adopting those motions, he also files this separate motion to ensure inclusion of all items relevant to his defense, and to lay out more specific legal authority to justify his various requests for discovery.

Under the law, the Government's obligations extend beyond documents within its actual possession, to items within its custody and control. *See, e.g.*, Fed. R. Crim. P. 16(a)(1)(B)(i) (requiring disclosure if the attorney for the government "knows – or through due diligence could know – that the statement exists"). Consistent with due process, the prosecutors also have a duty to learn of any favorable evidence known to others acting on the government's behalf. *See* Youngblood v. West Virginia, 547 U.S. 867 (2006) (*Brady* suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor). Particularly in a case such as this, which involves a wide-ranging investigation

1

utilizing multi-agency task forces, this Court should order the prosecutors to inquire of each agency involved in the investigations to ensure the Government's compliance with its Rule 16 and other pretrial discovery obligations.

Notwithstanding this law, the Government's latest response suggests a truncated view of its discovery obligations. The Government repeatedly suggests, for example, that it will only produce Jencks materials within its actual "possession," *see* Government's Omnibus Response (Docket #216), at 4, 5-6, 7, even though the Government elsewhere has admitted, for example, that the Drug Enforcement Administration (DEA) funded the wiretaps in this case, and that its agents were "briefed on the status of the investigation" by the foreign law enforcement officials who received these U.S. payments. *Id.* at 45. *See also* Government's Motion to Exclude Time Under the Speedy Trial Act (Docket #110), at 3 (this indictment "is the result of a continuing long term international criminal cocaine trafficking investigation"). While the Government now tries to claim that Colombian, Jamaican and Panamanian authorities are inherently separate from American agents, it previously admitted that these same law enforcement authorities sometimes acted not independently of, but "in cooperation with the DEA." *Id.* at 9.

By the Government's analysis, it could selectively accumulate discovery materials and manipulate such productions; its agents could even orally advise Colombian and other law enforcement officials who worked with them collaboratively for years to simply avoid turning over witness statements or even exculpatory materials, so American agents could claim that no Jencks or *Brady* materials ever came into the "possession" of the United States. Our United States Government, which routinely prosecutes and imprisons defendants under Title 21 based on a theory of "constructive" possession, cannot simultaneously seek to limit its own discovery

obligations under 18 U.S.C. § 3500 by using an overly narrow interpretation that encompasses only "actual" possession. Common sense and due process require more.

Similarly, the Government has argued that Fed. R. Crim. P. 16(a)(2) "prohibits the discovery or inspection of reports, memoranda, or other internal government documents made by the government or other government agents in connection with investigating or prosecuting the case." Government's Response to Perez-Rincon Discovery Requests (Docket #174), at 2; Government's Omnibus Response (Docket #216), at 24. But Rule 16(a)(2) provides a huge caveat – "Except as Rule 16(a)(1) provides otherwise" – which the Government's bold statement conspicuously omits.[1] More importantly, the Government's position that it need not and will not be turn over agents' reports is inconsistent with the representations it made to this Court in seeking a speedy trial waiver, and is the subject of a separate motion by Mr. Delgado-Gomez.

The Government repeatedly states that it "will produce documents as required under the Brady rule, Rule 16 and the Jencks Act at the appropriate time." But in its mind, all of these categories are lumped into one, and the "appropriate time" is never more than 7 days before a witness testifies – and may be after the trial begins, even for Brady. *See, e.g.*, Government's Response to Perez-Rincon's Discovery Requests (Docket #174), at 9 ("there is nothing in Brady or Agurs to require that such disclosures be made before trial.").[2]

---

[1] Where Rule 16(a)(1) requires discovery of vital information such as Rule 16(a)(1)(G)'s requirements concerning expert witnesses, for example, the Government claims simply that it "will provide" its expert witnesses' "identity and written summary of any testimony that the government intends to use as evidence at trial .... no less than the Thursday prior to the week of the expert witness testimony." *id.* at 7-8, ignoring Rule 16(a)(1)(G)'s broader right to production of "the witness' opinions, the bases and reasons for those opinions, and the witness's qualifications," as well as the logistical burdens of forcing the defense to obtain authorization for its own experts, engagement of a viable expert on such short notice, expedited review of the Government's expert findings, and perhaps rebuttal analysis in such a truncated timeframe, in the midst of an ongoing trial. Essentially, the Government pledges that it will treat its expert witnesses pursuant to the terms of the Jencks Act – despite the fact that Rule 16(a)(1)(G) was adopted so that this would not happen, since experts are different.

[2] The Government apparently also considers the parameters of Brady's materiality requirement so narrow that nothing can constitute Brady unless the Government reasonably believes its production would cause the result

3

The Government appears to be trying to sell this Court on the idea that "international cocaine trafficking conspiracy cases" are somehow categorically different from all other criminal cases, and should be judged by a less demanding standard of discovery. Government Omnibus Response (Docket #216), at 32. Given the current status of the discovery it has produced, even the Government admits that it "understands the frustration of defense counsel." *Id.* But the rules of criminal discovery contain no exception for "international cocaine trafficking conspiracy cases." The rules that apply to "a District of Columbia based drug conspiracy case [with] which defense counsel are most likely familiar," *id.*, are the same rules that are applicable here. Nor are they unfair. This case has been on the docket since 2005. It has undergone three superseding indictments. Mr. Delgado-Gomez has been named as a defendant for <u>more than 2½ years</u>, since January 3, 2006. Like many co-defendants, he waited in a Colombian prison for some <u>17½ months</u> pending extradition requested by the United States, while evidence easily could have been accumulated and made ready for production. And he has now been <u>in this jurisdiction more than six months</u>. The fact that we are less than two months from trial, with the Government admitting discovery productions so sparse that defense counsel's frustration is understandable, is only proof that more active intervention by this Court is both warranted and required.[3]

Mr. Delgado-Gomez deserves a fair trial, and this Court's Order on pretrial discovery should be crafted in a manner that achieves that objective, and minimizes the risk of delays, disruptions or even a new trial or reversal that could be caused by unnecessary and unwarranted delays or failures in pretrial disclosure. *See* Fed. R. Crim. P. 2 ("These rules are to be interpreted

---

of the proceeding to be different. See Government's Response to Perez-Rincon's Disccovery Requests (Docket #174), at 4. While that may be the standard for reversal when undisclosed Brady is discovered post-trial, it should not be the standard governing production decisions pre-trial; rather, all exculpatory evidence should be disclosed.

[3] Indeed, as the Government just admitted, even known discovery materials seized by our own federal government – such as the U.S. Coast Guard's seizure of evidence for Count Six – has not yet even been transported to Washington, D.C. for review and production. *See* Government's Omnibus Response (Docket #216), at 19.

4

to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.").

SPECIFIC DISCOVERY REQUESTS

Pursuant to Defendant Delgado-Gomez's due process and other constitutional rights, and the other authorities cited below, Mr. Delgado-Gomez respectfully requests production of the following pretrial information no later than 30 days after the August 14, 2008 Status Conference in this case, unless otherwise indicated:

**(1)** <u>**Statements**</u>

    **(a) Defendant's Written or Recorded Statements [Fed. R. Crim. P. 16(a)(1)(B)].** The Government should be ordered to immediately produce (1) Any relevant written or recorded statement by the defendant within the possession, custody or control of the government that is known, or that through due diligence may become known, (2) Any reference in any written record of any oral statement made before or after arrest by the defendant to a person known by the defendant to be a government agent, and (3) Defendant's grand jury testimony (if any exists) relating to the charged offenses.

    The Government has not yet produced any such statements to Mr. Delgado-Gomez. The Government also has apparently stated formally that no such statements by any defendant exist. *See, e.g.*, Joint Motion to Suppress Evidence (Docket #183), at 1 note 2 ("the government has made representations before the court that there are no statements made by any of the co-defendants."). Nevertheless, the Government should be ordered to exercise due diligence to confirm this, and immediately provide any such statements if they are discovered to be within the government's possession, custody or control.

    **(b) Defendant's Oral Statements [Fed. R. Crim. P. 16(a)(1)(A)].** The Government should also be ordered to immediately produce the substance of any oral statements made by the defendant, whether before or after interrogation by any person then known by the defendant to be a government agent or law enforcement officer, that the government intends to use in any manner at trial – regardless of whether any written record of the statement exists. In the event the government intends to use such an oral statement at trial, this Court should order, consistent with Fed. R. Crim. P. 16(a)(1)(A), that the statement be reduced to writing and produced. This request includes the substance of the defendant's response to *Miranda* warnings. As with (a) above, the Order should also specifically order the Government to ask each law enforcement agency involved in investigating or prosecuting this case to search its files for responsive information.

(c) **Defendant's Prior Record [Fed. R. Crim. P. 16(a)(1)(D)].** The Government should be ordered to immediately produce a copy of the defendant's criminal record within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known to the government. This request includes the defendant's entire criminal record, including all arrests and offenses regardless of conviction or severity. It also includes all matters that may affect the defendant's criminal history score pursuant to U.S.S.G. Chapter 4. The Government admits that at least one defendant has a criminal record, and it says it "will produce those records" (but without specifying any timeframe). Government's Omnibus Response (Docket # 216), at 20. All such records should be ordered produced immediately.

(2) **Documents, Data and Objects.** The Government should be ordered to immediately produce:

(a) **Documents, Data or Objects Material To Preparing A Defense [Fed. R. Crim. P. 16(a)(1)(E)(i) and *Brady v. Maryland*, 373 U.S. 83 (1963)].** The Government should be ordered to permit the inspection, copying or photographing of all documents, data or tangible objects within the possession, custody or control of the government that are material to the preparation of the defense. This materiality burden "is not a high one," and it includes information that both helpful to a defense and inculpatory. *See United States v. Safavian*, 233 F.R.D. 2, 15 (D.D.C. 20006) (it is just as important for the defense to know its potential pitfalls as well as its strengths). This rule requires production of more than simply material that directly refutes the Government's case-in-chief. *See United States v. Armstrong*, 517 U.S. 456, 462 (1996) ("defendant's defense" in Rule 16(a)(1)(E)(i) means "defenses in response" to the Government's case-in-chief). *See also id.* (Souter, Breyer & Ginsburg, JJ., concurring) ("material to the defense" may include defenses unrelated to the mertis, such as a Speedy Trial Act claim, forseeeable surrebuttal to a likely government rebuttal, and defenses such as alibi, self-defense, duress, insanity, entrapment and public authority). The goal of the production should be not only to produce documents that "significantly ... alter the quantum of proof in [the defendant's] favor," *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975), but also documents that are "relevant to the development of a possible defense." *United States v. Mandel*, 914 F.2d 1215 (9th Cir. 1990). This request specifically includes all statements, criminal records and any presentence reports prepared for any of his co-defendants, or for any cooperating witnesses or informants that the Government has utilized.

(b) **Material Government Intends To Use In-Chief [Fed. R. Crim. P. 12(b)(4)(B) & 16(a)(1)(E)(ii)].** The Government should be ordered to produce or otherwise make available all documents, data and tangible objects, including tape recordings and transcripts, which the government intends to use as evidence in its case-in-chief. In this regard, the Government also should be ordered to produce any index or working exhibit list of items it intends to introduce at trial. *See United States v. Madeoy*, 652 F. Supp. 371, 375 (D.D.C. 1987) (within court's discretion to order Government to provide witness or exhibit list); *United States v. Falkowitz*, 214 F. Supp. 2d 365, 392 (S.D.N.Y.) (ordering Government to produce working copy of exhibit list before trial began). The Government should also be ordered to separately identify any materials being produced in this category from the materials being produced in other categories.

(c) **Material Obtained From or Belonging To Defendant [Fed. R. Crim. P. 16(a)(1)(E)(iii)].** The Government should be ordered to produce all materials obtained from or belonging to the defendant that are within the possession, custody or control of the government regardless of how obtained or the identity of the person who obtained them.

**(3) Reports of Examinations and Tests [Fed. R. Crim. P. 16(a)(1)(F) and *Brady*].**

The Government should be ordered to produce all results or reports of physical or mental examinations, and scientific tests or experiments within the possession, custody or control of the government, or that by the existence of due diligence may become known to the government, and which are material to the preparation of Mr. Delgado-Gomez's defense or are intended for use by the government as evidence in chief at trial. To the extent not covered by Request (2)(a) above, this request includes, but is not limited to, any polygraph test given to any witness, informant, or other individual, as well as a written summary of the questions asked, responses given, and examiner's conclusions. In the event that the results of any scientific tests were reported orally to the prosecutor or to any government official or law enforcement officer, the Government should also be ordered to cause a written report of the results to be made and produced, consistent with their obligations under *Brady* and Fed. R. Crim. P. 16(a)(1)(G). To assure compliance with this request, the prosecutor should be ordered to contact each law enforcement agency involved in the investigation or prosecution of this case to determine whether relevant examinations or tests were conducted, and if so, the results or reports should be ordered produced.

**(4) Expert Witnesses [Fed. R. Crim. P. 16(a)(1)(G)]**

Pursuant to Rule 16(a)(1)(G), the Order should state that, in the event the Government intends to offer any expert testimony under the Federal Rules of Evidence through any witness, including a government agent or employee or law enforcement officer, it should prepare and produce a summary of the witness' opinion testimony, the grounds or basis for any such opinion testimony and the qualifications of each such expert witness. Even if a summary does not currently exist, the prosecutor must order one prepared to comply with this request. *See* Rule 16 Advisory Committee Note to 1993 Amendments. The facts and data on which the expert's opinion are based should be disclosed as part of the report. *See, e.g., United States v. Wilkerson*, 189 F.R.D. 14, 16 (D. Mass. 1999) (Rule 16(a)(1)(G) is intended to require disclosure of more than required by Rule 16(a)(1)(F)). This production should also be ordered to occur sufficiently in advance of trial so that the defense will have adequate time to react as needed, by filing a motion in limine, or by exploring the option of retaining a rebuttal expert witness, in order to assist in the cross-examination of such experts or by testifying in the defense's case.

To the extent that the Government will seek to introduce law enforcement officers' testimony that includes opinions stemming from the agents' specialized knowledge and experience, this Court should order the Government to produce expert summaries and comply with all of Rule 16(a)(1)(G)'s other requirements, or face exclusion of the evidence under Fed. R. Crim. P. 16(d)(2). *See United States v. Finley*, 301 F.3d 1000, 1016-17 (9th Cir. 2002) (court may exclude expert testimony when the notice is not adequate). *See also United States v. Cruz*, 363 F.3d 187, 194-95 (2d Cir. 2004) (courts must be "especially vigilant" to the danger that expert testimony "will stray from applying reliable methodology and convey to the jury sweeping conclusions about the defendant's activity in a given case").

The need for pretrial disclosure is particularly acute in this context of opinion evidence. Experts may base their opinions on facts and data that "need not be admissible in evidence." Fed. R. Evid. 703. Accordingly, Rule 16(a)(1)(G)'s pretrial disclosures assist a defendant not only in testing an opinion, but also in making evidentiary objections and filing motions in limine as necessary to prevent prejudice when hearsay that would otherwise violate his Sixth Amendment confrontation rights, or other inadmissible evidence, would reach a jury only indirectly through opinion testimony. This Court is tasked to perform a "gatekeeping" funciton in determinining the admissibility of both scientific and the type of "soft" expert testimony that the Government may seek to introduce in this case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ("The trial court must have ... latitude in deciding *how* to test an expert's reliability, and to decide whether and when special briefings or other proceedings are needed to investigate reliability") (emphasis added). This determination is best made pretrial, *see* Fed. R. Crim. P. 12(e); Fed. R. Evid. 103(c) (suggesting that a court should resolve significant evidentiary issues when possible before trial and outside the hearing of the jury), which necessarily means that discovery under Rule 16(a)(1)(G) must be provided pretrial.

### (5) Other Offense Evidence [Fed. R. Evid. 404(b)]

As also set forth in a co-defendant's 404(b) motions that Defendant Delgado-Gomez is adopting, this Court should order the Government to provide advance notice of any "other offense" evidence it intends to introduce in its case-in-chief. The Order should also require the Government to disclose to Mr. Delgado-Gomez all Rule 404(b) evidence that exists on any and all of his co-defendants, and that all notices of intent to introduce Rule 404(b) evidence be provided sufficiently in advance of trial to allow him to investigate these incidents (involving conduct that did not result in a conviction) and evaluate the potential spillover prejudice that may ensue, so that he can timely consider the filing of any motions in limine or motions to sever that may be warranted. The Government should also be ordered, at the time it identifies any Rule 404(b) "other offense" evidence that it intends to offer in rebuttal, to produce and identify such evidence separately and promptly.

### (6) Summary Witness or Charts [Fed. R. Evid. 1006]

This Court should order the Government, in the event that it intends to call any summary witnesses at trial or to present evidence in the form of a chart, to produce in advance of trial all of the original documents, tape recordings or other source data on which such testimony or chart is based, so that the defense can analyze the underlying information, evaluate the proposed testimony or charts, file any appropriate motions in limine, and consider rebuttal witnesses or charts for the defense without a need to seek a continuance that may delay the trial.

The Government has already produced to the defense, for example, both a Power Point presentation and a chart grouping certain conspirators by location. The Government has not identified the source data on which these summaries were based. Unless the Government affirmatively indicates that it does not plan to introduce these summaries, the underlying information on which these summaries are based should be ordered produced, under Rule 1006.

### (7) Brady/Giglio Material

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), this Court should order the Government to produce any and all exculpatory material that relates to or has a bearing on guilt or punishment, including all impeachment evidence or information that is within its possession, custody or control. The Government should be ordered to produce this material immediately, or as soon therafter as it comes within its possession, custody or control, so that defendant can use it effectively in the preparation and presentation of his defense. *United States v. Pollock*, 534 F.2d 964, 973 (D.C. Cir. 1976); accord *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988); *United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1984); *United States v. Recognition Equipment, Inc.*, 711 F. Supp. 1, 4 (D.D.C. 1989). The Government also should be ordered to exercise diligence in seeking such evidence, since the due process clause prevents suppression of exculpatory material irrespective of the good faith or bad faith of the prosecutor. Pursuant to *Giles v. Maryland*, 386 U.S. 66, 74 (1967), the Government also should be ordered to produce any favorable evidence that could be used "in obtaining further evidence."

If the Government believes that any *Brady* or *Giglio* material need not be produced immediately because it is also Jencks Act material, it should be ordered to present such evidence to the Court for *in camera* review and an evaluation of pretrial need, with the defense to be provided with a summary of the general nature of the evidence. If the Government refuses to provide any information that might arguably be considered to be *Brady* or *Giglio*, or that is exculpatory or impeaching as to any charge, defense, or punishment, based on a Government belief that such evidence or information is somehow not "material," or based on its unilateral assessment of a witness' credibility, or if any doubts exist with regard to whether certain information might constitute *Brady* or *Giglio* material, this Court should order the Government to submit all such material or information to the Court, with notice to the defense, for review *in camera* to resolve those issues. *See, e.g., Sellers v. Estelle*, 651 F.2d 1074, 1077 n.6 (5th Cir. 1981); *United States v. Gleason*, 265 F. Supp. 850, 886 (S.D.N.Y. 1967) (favorable material that must be disclosed to the defense under *Brady* need not be competent evidence admissible at trial).

### (8) Jencks Act Material

The Government should be ordered to produce all Jencks Act material early enough to furnish the defense with sufficient time to examine and utilize this material in a meaningful way before and during trial, and to prevent the unnecessary delays at trial that would otherwise ensue. *See United States v. Hinton*, 631 F.2d 769, 781 (D.C. Cir. 1980) (abuse of discretion for a court to deny a request for reasonable delay to allow counsel an opportunity examine witness statements and prepare to effectively use them at trial). What that means in terms of timing depends on the specific facts and circumstances of each case. But this Court has authority, pursuant to the Fifth and Sixth Amendments to the U.S. Constitution, Fed. R. Crim. P. 2 and/or its inherent supervisory powers, to urge the Government to make an early production of Jencks Act materials, or in some situations to override the timing provisions set forth in the Jencks Act.

In *United States v. Hinton*, 631 F.2d 769 (D.C. Cir. 1980), the D.C. Circuit recognized the potential impact of late Jencks Act disclosure upon the defendant's Sixth Amendment rights. There, during a hearing, defense counsel was provided with "voluminous Jencks material" in the form of FBI 302s. *Id.* at 781. This Circuit held that "in the rush and confusion" of the hearing, counsel failed to recognize "the critical importance of the 302's," and as a result, the appellant was deprived of her constitutional right to the "informed, professional deliberation of counsel." *Id.* at 782.

Here, in order to accomplish even a rudimentary investigation as needed to provide effective assistance to the defendant, and to make fair use of these materials in this admittedly complex case involving multiple defendants and conspiracy charges that span many years, often based on claims made by an undetermined number of informants, defense counsel and his investigator will require production of Jencks Act material well before the jury is sworn – especially since a viable defense may require investigation overseas. *See United States v. Holmes*, 722 F.2d 37, 41 (4th Cir. 1983) (providing materials one day before trial began did not "afford[] a reasonable opportunity to examine and digest" the documents); *United States v. Snell*, 899 F. Supp. 17, 24 (D. Mass. 1995) (nothing in Jencks Act preempts a court's ability, consistent with its obligations over case management and due process, to order earlier disclosure than Jencks Act requires).

Under the facts of this case, the defense submits that all Jencks Act material should be ordered disclosed within 30 days, and in any event at least a week in advance of the trial, in order to assist the defendant in achieveing a fair trial, and to serve the public interest in expediting the fair resolution of criminal cases. *See* ABA Standards for Criminal Justice, § 11-2.2, *see, e.g., United States v. Tarantino*, 846 F.2d 1384, 1415 n.12 (D.C. Cir.), *cert. denied*, 488 U.S. 840 (1988); *United States v. Hinton*, 631 F.2d 769 (D.C. Cir. 1980); *United States v. Poindexter*, 727 F. Supp. 1470, 1484-85 (D.D.C. 1989). It is fundamentally unfair, and would only promote gamesmanship and injustice, to permit the Government to sit on witness statements, including some perhaps taken years ago, only to then dump extensive Jencks Act materials on a defendant who has been forced to complete jury selection, and to complete an opening statement, based on incomplete information – forcing defense counsel either to hedge when creating the crucial first impression with a jury, or to risk presenting a defense that could be irreprabably prejudiced by Jencks materials to which he had been refused any access. The Government's professed willingness to produce Jencks Act materials the Thursday before their testimony – but nevertheless long after opening statements – does nothing to alleviate this prejudice.

Mr. Delgado-Gomez also submits that Jencks material should be produced both in English and in the original language of the statement. In its latest Omnibus Response, the Government concedes that it will produce the statements of its witnesses in their original language, as some defendants have requested. But it says nothing about when English translations will be produced to the defense. If the Government makes foreign language productions on the Thursday before each witness testifies, the advance notice will in effect would be far less than what it claims is the norm: if the production that day is made in Spanish (or even Palois), there may be significant delays before translations can be performed and English-speaking defense counsel can read and evaluate the statements of each witness. The Government will no doubt have prepared English translations so that prosecutors will understand the upcoming testimony before putting such witnesses on the stand; they also will surely be showing English translations to the jury. Pursuant to Fed. R. Crim. P. 16(a)(1)(E)(ii), this Court accordingly should order production of the Government's English translation well in advance of trial – to minimize trial delays, to allow verification of the Government's interpretations, and to provide defense counsel with adequate advance notice of the testimony to prepare for cross-examination and obtain suitable rebuttal.

**(9) Sentencing Information [U.S.S.G. § 6B1.2, p.s. comment]**

The Sentencing Commission has encouraged prosecutors prior to the entry of a plea of guilty to disclose to a defendant the facts and circumstances of the offense and offender characteristics, then known to the prosecuting attorney, that are relevant to the application of the sentencing guidelines. U.S.S.G. §6B1.2, p.s. comment. To insure that Mr. Delgado-Gomez can make an informed and intelligent decision regarding the possible or probable consequences of pleading guilty or requesting a trial, this Court should order the Government to advise Mr. Delgado-Gomez of any facts and circumstances presently known to the Government or reasonably discoverable within its possession, custody or control, that relate to sentencing issues arising under the sentencing guidelines, or to calculation of the applicable sentencing guideline range, or to any reason to depart or deviate from any of those guidelines, if Mr. Delgado-Gomez is convicted of any one or more of the charges in the third superseding indictment.

More specifically, this Court should order the Government to produce to the defendant, as soon as such information is available, the following information related to this case:

- What guidelines does the government contend are applicable?
- What aggravated offense characteristics, if any, does the government contend are applicable?
- What adjustments, if any, does the government contend are applicable?
- Upon what grounds, if any, will the government seek a departure from the guidelines?
- What criminal history category does the government contend is applicable?

The Government should also be ordered to provide any information that would bear upon the calculation or computation of the following sentencing and guideline factors:

- Base offense level
- Specific offense characteristics
- Relevant conduct
- Adjustments for criminal history

As noted previously, the Order should also specify that any *Brady* information that is favorable to Mr. Delgado-Gomez and material to the court's determination of a sentence under the sentencing guidelines in the event of a plea of guilty or conviction must be produced.

**(10) Continuing Discovery Obligations [Fed. R. Crim. P. 16(c)]**

Finally, pursuant to Rule 16(c), the Order should specify that the Government, after any production, assertion of a justification for non-production, or a court-ordered discovery deadline, has a continuing duty to advise the defendant of any new information as it becomes available, and should disclose all discoverable information to the defendant immediately thereafter.

## CONCLUSION

WHEREFORE, Mr. Delgado-Gomez requests that this motion be granted, and that the Government be ordered to produce the requested discovery no later than 30 days after the August 14, 2008 Status Conference, unless otherwise indicated.

Respectfully submitted,

_____/s/_____
Gregory S. Smith
D.C. Bar No. 472802
913 East Capitol Street, S.E.
Washington, D.C. 20003
(202) 460-3381


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANT DELGADO-GOMEZ'S MOTION FOR PRETRIAL DISCOVERY is being served upon the United States, through Department of Justice Trial Attorney Patrick H. Hearn, Esq., and on counsel for each of his co-defendants, through the Electronic Case Filing system. This 12th day of August, 2008.

_____/s/_____
Gregory S. Smith